Joseph E. Mattia, Esq. (PA ID #326282)
Morgan & Morgan, P.A.
2005 Market Street, Suite 600
Philadelphia, PA 19103
Tel. 445.201.8618
Fax 215.446.3821
Email: Joseph.Mattia@forthepeople.com
*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARION MANN and RYAN SCOTT,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:26-cv-7967<br><br>**COMPLAINT** |

Plaintiffs Marion Mann and Ryan Scott, beneficiaries of the basic and supplemental life coverage that covered Alexander Robert Schrift, which was insured and underwritten by Defendant, Metropolitan Life Insurance Company ("MetLife"), by their undersigned attorney, bring this action to recover benefits due under ERISA and state as follows:

## NATURE OF THE CASE

1. This is an action for violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Alexander Schrift was a plan participant in the ERISA welfare benefit plan offered by his employer, ShipBob, Inc., which included basic and supplemental life insurance benefits underwritten and insured by MetLife.

2. Plaintiffs, Marion Mann and Ryan Scott, are the named beneficiaries of the basic and supplemental life insurance policy that covered Mr. Schrift.

3. MetLife has unlawfully denied Plaintiffs' claim for life insurance benefits under the plan that covered Mr. Schrift.

4. Plaintiffs, as the named beneficiaries to Mr. Schrift's policy, file this action to recover these benefits. Plaintiffs look to enforce their rights under the terms of the policy, and to recover costs and attorney's fees.

**PARTIES**

5. Plaintiff Marion Mann is a citizen of Westchester County, New York. Marion Mann is the mother of Mr. Schrift.

6. Plaintiff Ryan Scott is a citizen of Pasco County, Florida. Ryan Scott was Mr. Schrift's spouse.

7. The insured employee under the ERISA governed life insurance policy was Alexander Schrift, who passed away on May 12, 2025.



*Alexander Schrift with his mother Marion Mann*

8. Defendant, MetLife, is a New York corporation that requires group life insurance claims to be submitted to its office in Scranton, Pennsylvania. MetLife is a global insurance company. The products and services that MetLife provides to the public are available nationally.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the matter pursuant to both 28 U.S.C. § 1331, because the action arises under the laws of the United States, and 29 U.S.C. § 1132(e)(1), because Plaintiffs seek to enforce their rights under ERISA.

10. ERISA provides nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). Defendant is a resident of the United States and subject to service in the United States, and this Court therefore has personal jurisdiction over it. Defendant is subject to this jurisdiction because it purposefully conducts and solicits life insurance business throughout Pennsylvania, conducts insurance activities within the Commonwealth, has a physical presence in the Commonwealth, and purposefully targeted the Pennsylvania insurance market.

11. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because MetLife may be found in this district and conducts substantial insurance business here, including insurance-related business activities.

## FACTUAL ALLEGATIONS

12. Marion Mann and Ryan Scott (collectively, "Plaintiffs") are beneficiaries, within the meaning of 29 U.S.C. § 1002(8), of the group life insurance policy that covered Alexander Schrift under Group Policy No. 260134-1-G (the "Policy"). Policy attached as **Exhibit A**.

13. Under the Policy, Defendant is a claims fiduciary.

14. At the time of his death, Mr. Schrift was an employee of ShipBob, Inc. ("ShipBob"), which offered these group benefits to its employees.

15. Mr. Schrift was hired by ShipBob in January 2022 as a Manager.

16. Mr. Schrift enrolled in the life insurance coverage offered by ShipBob at this time.

17. In 2022, the life insurance provider for ShipBob was BlueCross BlueShield of Illinois ("BlueCross"), which is the trade name used by Dearborn Life Insurance Company.

18. The life insurance coverage was issued under Policy No. VF025679-0001 (the "BlueCross Policy"). BlueCross Policy attached as **Exhibit B.**

19. In January 2024, Mr. Schrift took disability leave from work due to his health.

20. Mr. Schrift had a right parietal primary glioma, a serious brain tumor.

21. As such, Mr. Schrift could no longer work and his last day at work was January 19, 2024.

22. Even though Mr. Schrift was out on disability leave, he was able to maintain his life insurance coverage under the BlueCross Policy.

23. Specifically, the BlueCross Policy entitles an employee on disability leave to keep their coverage active if the premiums are paid.

24. Premiums for Mr. Schrift's coverage continued to be paid to BlueCross while he remained out of work.

25. On August 1, 2024, ShipBob moved insurance carriers from BlueCross to MetLife, and MetLife became the insurer of ShipBob's group life insurance coverage under Group Policy No. 260134-1-G (the "Policy").

26. The effective date of coverage under the Policy was August 1, 2024.

27. At this time, Mr. Schrift was still on disability leave due to his brain tumor.

28. Prior to the August 1, 2024, effective date, MetLife instructed ShipBob to identify employees who had elected life insurance coverage but were not expected to be Actively at Work[1] on the effective date.

29. MetLife requested, among other information, each employee's date last worked, disability or leave status, type of life insurance coverage, and the amount of coverage "needed to be covered by MetLife." Email attached as **Exhibit C**.

30. ShipBob provided the requested information to MetLife and identified Mr. Schrift as one of its employees who would not be Actively at Work on the effective date due to his disability leave.

31. MetLife did not tell ShipBob that Mr. Schrift was not eligible for coverage.

32. MetLife accepted premium payments for Mr. Schrift's coverage under the Policy.

33. Mr. Schrift had $136,000 in basic life and $150,000 in supplemental life coverage, totaling $286,000 in coverage. Benefit Statement attached as **Exhibit D**.

34. From August 1, 2024, through May 2025, MetLife collected and accepted premiums for the $286,000 in life insurance that covered Mr. Schrift.

35. During this time, Mr. Schrift would take regular trips to California to participate in a clinical trial at Stanford University to treat his cancer.

[1] As defined under the Policy; see Paragraph 75 herein.

36. While on such a trip, Mr. Schrift and Mr. Scott became engaged on January 6, 2025.



*Mr. Schrift's proposal to Mr. Scott on January 6, 2025*

37. The trips and treatment were very draining on Mr. Schrift, but he continued with them.

38. Sadly, the clinical trial was ultimately not effective.

39. On April 22, 2025, Mr. Schrift and Mr. Scott were officially married.

40. On May 12, 2025, Mr. Schrift lost his years-long fight with his cancer and passed away.

41. Following Mr. Schrift's death, Plaintiffs submitted claims for the benefits under the Policy.

42. Marion Mann submitted a claim on her own behalf as the mother of Mr. Schrift and 100% beneficiary of the basic life benefits and 40% beneficiary of the supplemental life benefits.

43. Ryan Scott submitted a claim on his own behalf as Mr. Schrift's spouse and 60% beneficiary of the supplemental life benefits.

44. MetLife assigned Claim No. 22505010929 (the "Claim") to Plaintiffs' claims.

45. On August 4, 2025, MetLife issued a denial of Plaintiffs' Claim. Denial letters attached as **Exhibit E**.

46. Metlife's denial stated that because Mr. Schrift was not actively at work on August 1, 2024, his insurance coverage did not take effect on that date.

47. The denial further stated that because Mr. Schrift never actively returned to work after his January 19, 2024, disability date, coverage never became active and he was not covered under the Policy.

48. After this denial, Marsh McLennan Agency ("MMA"), the world's largest insurance broker, contacted MetLife and asked it to reconsider its decision on the Claim.

49. On August 22, 2025, Nicole Delimitros, Head of Channel Management & Partnerships at MMA, emailed MetLife to submit a formal request to MetLife's leadership team to revisit the Claim and pay it in good faith. Email attached as **Exhibit F**. Ms. Delimitros stated her email was being sent as a follow-up to the discussion she already had with Nicole Denton, Communication Firms Relationship Manager at MetLife.

50. Ms. Delimitros explained that both MMA and ShipBob were requesting that the Claim be paid in good faith, given the circumstances.

51. On August 25, 2025, Marc P. Perez, Senior Account Executive at MetLife, emailed his team at MetLife asking questions about the decision on the Claim. Email attached as **Exhibit G.**

52. In his email, Mr. Perez questioned MetLife's denial of the Claim, noting that MetLife had taken over ShipBob's life insurance plan with knowledge that Mr. Schrift was not Actively at Work, and asked whether those circumstances warranted changing or reconsidering MetLife's claim decision. **Exhibit G**.

53. On August 26, 2025, Candice Pietruch, Unit Leader at MetLife, responded to Mr. Perez's email. Email attached as **Exhibit H**.

54. Ms. Pietruch stated that while there was "Transition Coverage" under the Policy, it cannot last longer than 12 months, so Mr. Schrift's death was not covered as it fell outside that period.

55. On August 27, 2025, Jason Longo, Manager of Group Life Operations at MetLife, responded to Mr. Perez's email. Email attached as **Exhibit I.**

56. Mr. Longo stated that there is "replacement coverage" available under the Policy, but that it does not stay in effect forever. He further explained that the longest a disability could extend coverage under the Policy is 12 months, so Mr. Schrift's death was outside that period and not covered. **Exhibit I**.

57. On August 28, 2025, MetLife issued letters amending its August 4, 2025, denial it sent to Plaintiffs. Denial Amendments attached as **Exhibit J**.

58. The two amendment letters include the same information.

59. MetLife stated the amendment was issued after an additional review was undertaken of Plaintiffs' Claim.

60. The amendment stated that Mr. Schrift was eligible for coverage under the Policy through the "Special Rules for Groups Previously Covered Under Other Group Life and AD&D Insurance" provisions.

61. However, the amendment also stated Mr. Schrift's "eligibility for active coverage ended on January 19, 2025, after having not been actively at work for over 12 months[.]" **Exhibit J.**

62. At no time during Mr. Schrift's disability leave had MetLife notified either ShipBob or Mr. Schrift of such eligibility ending.

63. Despite their neglect to communicate this while Mr. Schrift was still alive and able to purchase alternate life insurance coverage, MetLife's amendment stated that Mr. Schrift did not have coverage under the Policy when he passed away.

64. On October 13, 2025, Plaintiffs submitted their appeal of Defendant's denial.

65. On October 21, 2025, Defendant responded with another denial. Denial attached as **Exhibit K**.

66. Defendant once again stated coverage ended as of January 19, 2025, due to Mr. Schrift's out-of-work status, and thus, no benefits were owed. **Exhibit K**.

## COUNT I

## CLAIM FOR BENEFITS UNDER ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

67. Plaintiffs repeat and incorporate by reference the allegations contained in all prior paragraphs as though fully set forth herein.

68. The Policy became effective on August 1, 2024, and governs life insurance benefits for employees of ShipBob.

69. The Policy provides Transition Coverage for employees who were covered under the BlueCross Policy but were not Actively at Work as of the Replacement Date. **Exhibit A**.

70. The Replacement Date is defined as the date the Policy became effective – i.e., August 1, 2024.

71. The Policy states:

If You are not Actively at Work on the Replacement Date due to a disability, Transition Coverage will remain in effect on and after the Replacement Date until the earliest of:

- the date You return to Active Work as a member of an eligible class, at which time Active Employee Coverage will supersede the Transition Coverage;
- the date Life and AD&D Insurance would otherwise end in accordance with the terms and conditions of this certificate;
- the date on which Your life and AD&D insurance under the Prior Plan would have ended for any reason other than the Prior Plan ending;
- the date You are approved for extension of life and AD&D insurance without premium payment under the terms of Prior Plan; and
- if the Prior Plan provided for extension of life and AD&D insurance without premium payment during a period of disability, the last day of the 12-month period following the Replacement Date.

**Exhibit A.**

72. The BlueCross Policy included an extension of benefits without premium payment during a period of disability. **Exhibit B**.

73. The BlueCross Policy also included an extension of benefits *with* premium payment during a period of disability, which is the clause that extended Mr. Schrift's coverage until the Replacement Date.

74. The Policy includes its own extension of benefits with premium payment during a period of disability, but it is only applicable to employees who cease Active Work under the Policy. **Exhibit A**.

75. The Policy defines Actively at Work or Active Work as "performing all of the usual and customary duties of Your job on a Full-Time basis." **Exhibit A**.

76. Mr. Schrift did not cease Active Work while insured as an Active Employee under the Policy – he had already ceased Active Work while under the BlueCross Policy, before the Policy became effective, and was insured under the Policy through Transition Coverage.

77. Defendant's denial of the Claim was contrary to the terms of the Policy and was arbitrary and capricious.

78. Defendant does not give plain meaning to the words found within the Policy and directly ignores the clauses that are applicable to the Claim.

79. The Policy explicitly states that "if the Prior Plan provided for extension of life and AD&D insurance without premium payment during a period of disability," then Transition Coverage will end on "the last day of the 12-month period following the Replacement Date."

80. Mr. Schrift passed away on May 12, 2025, which is within the 12-month period following the Replacement Date.

81. Defendant improperly applies the terms of the Policy to state coverage ended prior to Mr. Schrift's death.

82. Significantly, Defendant applies a provision to Mr. Schrift that is only applicable to Actively at Work employees solely as a means to deny the Claim.

83. However, Mr. Schrift was never Actively at Work under the Policy, which is why Transition Coverage was active in the first place.

84. Properly applying the Policy's terms to Mr. Schrift's circumstances, no applicable event terminated his Transition Coverage before his death on May 12, 2025.

85. Premiums attributable to Mr. Schrift's life insurance coverage continued to be paid to MetLife and accepted through the month of his death.

86. By virtue of its own inquiry, Defendant was aware that Mr. Schrift was on disability leave as of the Replacement Date, and that he had not been Active at Work since January 19, 2024.

87. ShipBob continued to treat Mr. Schrift as insured based on the terms of the Policy.

88. Defendant did not inform ShipBob at any time that Mr. Schrift's coverage ended, or that the premiums they were collecting were not being applied towards maintaining coverage.

89. Defendant has stated that benefits under the Policy for Mr. Schrift ended as of January 19, 2025, but its acceptance of premiums carried on for four (4) months after.

90. Defendant's own actions are not consistent with its basis for denial.

91. Defendant's continued acceptance of premiums while having knowledge of Mr. Schrift's out-of-work status under the Policy indicates coverage was active.

92. Only *after* Mr. Schrift's death did Defendant assert that his coverage had terminated on January 19, 2025.

93. The Policy also included a conversion right for when benefits terminated.

94. Defendant did not send a conversion notice to Mr. Schrift even though it claims his benefits ended as of January 19, 2025.

95. MetLife's actions further show that Defendant's conduct was consistent with Mr. Schrift's benefits being active at the time of his death.

96. No reasonable person in Mr. Schrift's, his family's, or ShipBob's position would assume benefits were not active given Defendant's actions.

97. Plaintiffs have exhausted all administrative remedies under the Policy to file suit.

**WHEREFORE**, Plaintiffs pray that this Court:

a. Award judgment in their favor and against Defendant;

b. Award payment of the $286,000 in benefits due to them under the Policy;

c. Award payment of all costs and attorneys' fees incurred in pursuing this action, pursuant to 29 U.S.C. § 1132(g);

d. Award pre-judgment and post-judgment interest as allowed under ERISA; and

e. Award such other and further relief as justice may require.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Joseph E. Mattia*
Joseph E. Mattia, Esq. (PA ID #326282)
Morgan & Morgan, P.A.
2005 Market Street, Suite 600
Philadelphia, PA 19103
Tel: 445.201.8618
Fax: 215.446.3821
Joseph.Mattia@forthepeople.com

*Attorney for Plaintiffs*